UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PEDRO RODRIGUEZ,

                      Plaintiff,

          v.

MRC BAKERY CORP. d/b/a LA GULI PASTRY
SHOP and MARIA NOTARO,

                    Defendants.

------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

24-CV-4570
(Merle, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Pedro Rodriguez brings this action against his former employer, MRC Bakery Corp. d/b/a La Guli Pastry Shop ("MRC Bakery" or "La Guli Pastry Shop"), and their owner and operator Maria Notaro (collectively, "Defendants"), raising claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL") §§ 650 *et seq*. *See generally* Dkt. No. 13. Plaintiff seeks recovery for Defendants' failure to pay overtime wages and "spread of hours" pay, and failure to provide wage notice and statements in contravention of the FLSA and NYLL. *Id.* ¶¶ 41-68. Plaintiff also seeks pre-judgment and post-judgment interest, attorneys' fees, and costs. *Id*. ¶¶ 47, 54, 58, 63, 68.

Currently pending before this Court, on a referral from the Honorable Natasha C. Merle, United States District Judge, is Plaintiff's motion for default judgment. *See* Dkt. Nos. 25, 29; *see also* Referral Order dated May 1, 2025. For the reasons set forth below, the undersigned respectfully recommends that the Court grant in part and deny in part Plaintiff's motion for default judgment, and that judgment be entered against Defendants, jointly and severally, in the amount of $102,099.31, comprising $30,472.56 in unpaid overtime damages; $7,536.00 in unpaid spread of hours damages; $38,008.56 in liquidated damages; $11,437.00 in attorneys' fees; $1,986.32 in costs; $12,658.87 in pre-judgment interest to increase by $9.37 per day until the entry of judgment;

and post-judgment interest.    Additionally, the undersigned respectfully recommends that Plaintiff's fourth and fifth causes of action be dismissed, without prejudice.[1]

## I.    Background

### A.    Factual Allegations

The following facts—taken from the Amended Complaint, Plaintiff's motion for default judgment, and the attachments filed in support thereof—are assumed true for the purposes of this motion.  *See NYQF Inc. v. Sigue Corp.*, No. 24-CV-3699 (AMD) (JAM), 2025 WL 1142154, at *1-*2 (E.D.N.Y. Apr. 21, 2025), *report and recommendation adopted*, 2025 WL 1303864 (E.D.N.Y. May 6, 2025) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

Plaintiff, a resident of Queens, New York, was employed by Defendants to perform manual labor at Defendants' pastry shop from "[i]n or about 2019" until his termination by Notaro "on or about May 6, 2024."  Dkt. No. 13 ¶¶ 6-7, 27-28.  MRC Bakery is a "domestic corporation organized and existing under the laws of the State of New York" with its principal place of business located at 29-15 Ditmars Blvd, Astoria, New York.  *Id.* ¶ 8.  Defendants operate a pastry shop, La Guli Pastry Shop, in Queens that sells desserts and beverages.  *See id.* ¶ 14.  The Amended Complaint alleges that at all pertinent times, MRC Bakery was engaged in interstate commerce under the FLSA as defined in 29 U.S.C. § 203(s)(1)(A), with an annual gross sales volume of not less than $500,000.  *Id.* ¶¶ 13-16, 19.

Plaintiff alleges, upon information and belief, that Notaro is "the owner, officer, director, and or managing agent of MRC [Bakery]."[2]  *Id.* ¶ 10.  Throughout the statutory period, Notaro

---

[1] Emily Sheftman, a judicial intern at the Benjamin N. Cardozo School of Law, is gratefully acknowledged for her assistance in conducting research for this Report and Recommendation.

[2] "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."  *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018). "Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly

2

was "responsible for all matters with respect to hiring and firing employees, determining employees' rates of wages, methods of pay." *Id.* ¶ 11. Notaro was also "responsible for maintaining employees' employment and wage records and information." *Id.* ¶ 12.

Defendants hired Plaintiff to work as a "general helper" which included stocking goods sold by Defendants, cleaning, washing dishes, taking out garbage and recycling, accepting deliveries, helping with food preparation, and "similar manual tasks" at Defendants' pastry shop. *Id.* ¶ 28. Plaintiff was initially paid $15.00 per hour, which increased to $16.00 per hour in January 2024. *Id.* ¶ 29. Plaintiff alleges that he was never paid overtime wages of "one and one-half times" his regular rate for hours worked in excess of forty hours per workweek. *Id.* ¶ 29. Plaintiff's Amended Complaint states that he regularly worked more than forty hours per week, and in support of this, provides eight weekly pay slips allegedly issued by Defendants at various points during his employment, purportedly showing that he worked between 53 and 76 hours during those respective weeks. *Id.* ¶¶ 31-34; Dkt. No. 13-1.

Plaintiff additionally alleges that Defendants did not properly provide him with additional "spread of hours" compensation of one-hour's pay at the minimum hourly wage rate for each day that he worked more than ten hours, in violation of NYLL Article 19 § 650. Dkt. No. 13 ¶ 56-57. Plaintiff also alleges that Defendants failed to provide Plaintiff with accurate wage statements, which included information regarding, *inter alia*, Plaintiff's rates of regular and overtime pay, and regular and overtime hours worked. *Id.* ¶¶ 60-63. Finally, Plaintiff alleges that Defendants did

---

within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Id*. at 384-85 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Here, based on other factual information contained in the Amended Complaint, the Court credits Plaintiff's allegation that Notaro is an "owner, officer, director and/or managing agent of MRC [Bakery.]" *See* Dkt. No. 13 ¶ 10.

not provide a written notice of wage rates, either at the time he was hired or throughout his employment by Defendants.  *Id.* ¶ 65-66.

### B.    Procedural Background

Plaintiff filed this action on June 27, 2024.  *See* Dkt. No. 1.  Plaintiff served MRC Bakery via delivery on an agent of the New York Department of State on August 1, 2024.  *See* Dkt. No 6.  Plaintiff served Notaro through substituted service delivery on an individual of suitable age and discretion at Notaro's actual place of business.  *See* Dkt. No. 7.  Plaintiff also mailed a copy to Notaro at her actual place of business via first class mail.  *Id.* at 2.  In accordance with Federal Rule of Civil Procedure 12(a)(1)(A), MRC Bakery's answer was due on August 22, 2024, and Notaro's answer was due on August 23, 2024.  *See* Dkt. Nos. 6, 7; Fed. R. Civ. P. 12(a)(1)(A).  Defendants did not answer or otherwise appear.

On Plaintiff's request, the Court adjourned, *sine die*, an initial conference scheduled for August 20, 2024, in light of Defendants' failures to appear.  *See* Dkt. No. 8; Text Order dated August 14, 2024.  The Court subsequently ordered Plaintiff to request a certificate of default regarding Defendants by September 23, 2024, which Plaintiff did.  *See* Text Order dated August 23, 2025; Dkt. No. 10.  The Clerk of Court entered a certificate of default regarding Defendants on September 20, 2024.  *See* Dkt. No. 11.

On October 23, 2025, the Court directed Plaintiff to move for a default judgment against Defendants by November 6, 2024.  *See* Text Order dated October 23, 2025.  Thereafter, Plaintiff requested and was granted leave to amend his complaint in lieu of moving for a default judgment.  Dkt. No. 12; Text Order dated October 24, 2024.

Plaintiff filed his Amended Complaint on November 4, 2024.  *See* Dkt. No. 13.  Plaintiff's Amended Complaint includes five causes of action against Defendants, namely: (i) failure to pay

4

overtime wages in violation of the FLSA (*id.* ¶¶ 41-47); (ii) failure to pay overtime wages in violation of the NYLL (*id.* ¶¶ 48-54); (iii) failure to pay spread of hours pay in violation of the NYLL (*id.* ¶¶ 55-58); (iv) violation of wage statement requirements under the NYLL (*id.* ¶¶ 59-63); and (v) violation of wage notice requirements under the NYLL (*id.* ¶¶ 64-68).

Plaintiff personally served the Amended Complaint on Notaro at her place of work, La Guli Pastry Shop, on November 13, 2024, and in accordance with Federal Rule of Civil Procedure 12(a)(1)(A), her answer was due December 4, 2024. *See* Dkt. Nos. 14, 18-1; Fed. R. Civ. P. 12(a)(1)(A). On November 13, 2024, Plaintiff also served MRC Bakery through service on Notaro, who is "designated by law to accept service of process" on behalf of MRC Bakery. *See* Dkt. No. 15. In accordance with Federal Rule of Civil Procedure 12(a)(1)(A), MRC Bakery's answer was due to be filed by December 4. 2024. *Id.*; Fed. R. Civ. P. 12(a)(1)(A).

The Clerk of Court entered a certificate of default regarding Defendants on December 26, 2024. *See* Dkt. No 17. On January 8, 2025, Plaintiff filed a letter, at the request of the Court, providing evidence of the propriety of Plaintiff' service of process on Defendants, as well as any other contact information Plaintiff might have for Defendants. *See* Text Order dated December 30, 2024; Dkt. No. 18. The Court directed additional service on Defendants of the docket of this case, which Plaintiff effectuated. *See* Text Order dated February 3, 2025; Dkt. Nos. 20-22. To date, neither of the Defendants has answered nor appeared.

The Court subsequently directed Plaintiff to move for a default judgment against Defendants. *See* Scheduling Order dated February 7, 2025; Text Orders dated April 7, 2025, April 18, 2025.

Plaintiff filed the instant motion on April 29, 2025.  *See* Dkt. No. 25; *see also* Dkt. Nos. 26-28.  On May 1, 2025, Judge Merle referred the present motion to the undersigned for a report and recommendation.  *See* Referral Order dated May 1, 2025.

On August 18, 2025, the Court held a status conference regarding certain damages calculations in Plaintiff's motion for default judgment.  *See* August 18, 2025 Minute Entry and Order.  Plaintiff file a supplement to his submission on August 20, 2025 and served the same on Defendants.  Dkt. Nos. 29, 30.

## II.  <u>Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nonetheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include (1) "whether the defendant's

default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *See Franco*, 2010 WL 3780972, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr.25, 2003)); *Enron Oil Corp.*, 10 F.3d at 96 (listing factors).

## III.   Jurisdiction and Venue

The Court "must [] satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    Subject Matter Jurisdiction

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States." 28 U.S.C. § 1331. Plaintiff's first cause of action, brought under the FLSA, alleges unpaid overtime wages. Dkt. No. 13 ¶¶ 41-47. Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous. *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022). This action thus arises under the laws of the United States, which gives the Court subject matter jurisdiction over Plaintiff's first cause of action. *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014) (stating that the FLSA claims arose under the laws of the United States and thus established subject matter jurisdiction); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 239 (E.D.N.Y. 2024) (finding FLSA claims conferred the court with subject matter jurisdiction).

The Court also has supplemental jurisdiction over Plaintiff's second and third causes of action brought under the NYLL.  *See* Dkt. No. 13 ¶¶ 48-54, 55-58.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).  Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[]."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, supplemental jurisdiction clearly extends to the second cause of action for unpaid overtime wages (Dkt. No. 13 ¶¶ 48-54) because it virtually overlaps with Plaintiff's first cause of action seeking recovery for the same violation under the FLSA.  The third cause of action, for NYLL violations of the spread of hours pay under the NYLL (Dkt. No. 13 ¶¶ 55-58) likewise arises from the same "common nucleus of operative fact" as the FLSA claims as it bears on Plaintiff's compensation from Defendants over the employment timespan in question.  *See Jimenez* 744 F. Supp. 3d at 238 (finding that the court has supplemental jurisdiction over plaintiff's claims for failure to provide "spread of hours" pay).

But as discussed further below, the Court lacks subject matter jurisdiction over Plaintiff's fourth and fifth causes of action, in which Plaintiff alleges violations of wage statement and wage notice requirements.  *See* Dkt. No. 13 ¶¶ 59-68.  In short, Plaintiff lacks standing to pursue these claims in federal court.

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies."  U.S. Const. Art. III, § 2, cl. 1.  A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.* (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Standing is not "dispensed in gross." *TransUnion*, 594 U.S. at 431.  Rather, the plaintiff must show standing separately for each claim asserted.  *Id*.  "[S]tanding is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction."  *Dunston v. Piotr & Lucyna LLC*, No. 21-CV-6402 (AMD) (SJB), 2023 WL 5806291, at *4 (E.D.N.Y. July 26, 2023) (quoting *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022)), *report and recommendation adopted*, 2023 WL 5806253 (S.D.N.Y. Sept. 7, 2023).  "Like all subject matter issues, standing can be raised *sua sponte*."  *Id.* (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction."  *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (emphasis in original), *aff'd*, 113 F.4th 300 (2d Cir. 2024).  Although a court may hear "state claims" if they "derive from a common nucleus of operative facts," a Court cannot "discern or speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims."  *Id.* (internal quotations and citations omitted).  The burden is on the Plaintiff to "establish standing

For each [] claim." *Rosario v. Prasad Cosm. Surgery*, No. 21-CV-02944 (NCM) (AYS), 2025 WL 486636, at *4 (E.D.N.Y. Feb. 13, 2025).  "The fact that the claims arise from a common set of facts does not relieve the plaintiff of its obligation to demonstrate constitutional standing to sue for each one." *Perez v. Mesa Azteca Corp.*, No. 23-CV-9374 (HG) (TAM), 2024 WL 5274641, at *10 (E.D.N.Y. Dec. 5, 2024) (quoting *Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12-CV-6154 (DLC), 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013)).

Here, Plaintiff does not allege facts linking any legally cognizable injury that he personally experienced to Defendants' purported failure to provide wage statements or Defendants' purported failure to provide Plaintiff with notice of his rate of pay, regular pay day, and such other information, as required by the NYLL.  *See Beh v. Cmty. Care Companions Inc.*, No. 19-CV-01417 (JLS) (MJR), 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022) ("While the deficiencies in defendants' provisions of hiring notices may amount to violations of the labor law, neither plaintiffs nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court"), *report and recommendation adopted*, 2023 WL 1969370 (W.D.N.Y. Jan. 26, 2023).  The Amended Complaint instead merely alleges that Defendants failed to comply with these statutory mandates. *See* Dkt. No. 13 ¶¶ 59-64.

Since the Supreme Court issued its decision in *TransUnion*, "courts throughout the Second Circuit have [] found no standing in cases, such as the instant case, where [the p]laintiffs have not established any injury traceable to violation of the wage notice and statement requirements." *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 55 (S.D.N.Y. 2023) (collecting cases); *see also Lucero v. Shaker Contractors, Corp.*, No. 21-CV-8675 (LGS), 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023) ("Courts in this District have applied *TransUnion* to find plaintiffs lack standing to

bring claims under the NYLL's wage notice and wage statement provisions when those plaintiffs do not make specific allegations of concrete injuries they suffered as a result of their employers' failure to provide required wage records."). Here, Plaintiff presents no cognizable theory as to how he was injured by Defendants' failure to provide the required documents. Indeed, neither the Amended Complaint nor Plaintiff's memorandum of law in support of this motion identifies that he suffered any specific and concrete injury caused by these alleged deficiencies. Dkt. Nos. 13 ¶¶ 61, 66-67; 28 at 12. Without concrete allegations of harm, Plaintiff's argument is entirely speculative. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 311 (2d Cir. 2024) (finding that the plaintiff lacked standing to sue for a violation of NYLL section 195 "[w]ithout plausible allegations that he suffered a concrete injury because of [the defendant's] failure to provide the required notices and statement").

A 2023 decision in this district styled *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) is illustrative here. In *Quieju*, the plaintiff, a former restaurant worker, alleged that his former employer violated the FLSA and the NYLL by, *inter alia*, not providing him "with a time-of-hire wage notice nor with the wage statements" under the NYLL. *Id.* at *1. The court held that the plaintiff was unable to show that he had standing to bring these claims, recognizing the plaintiff's implicit argument "that *if* [the] defendants had given him the required documents, those documents *would have* informed him that he was not being paid his required wages." *Id.* at *2 (emphasis in original). "Enlightened by that knowledge, [the] plaintiff then *would have* demanded his required wages. Having made such a demand, [the] defendants *would have* then paid him his required wages, and [the] plaintiff *would have* avoided the injury he suffered by the failure to properly pay him." *Id.* (emphasis in original). Although the plaintiff in *Quieju* tried to argue that this implicit analysis demonstrated that the plaintiff had suffered an

actual and concrete injury, the court found that "[t]his hypothetical chain of events is not what the Supreme Court means by an 'injury fairly traceable to the allegedly unlawful conduct.'"  *Id.* (quoting *California v. Texas*, 593 U.S. 659, 668-69 (2021)).  The court continued, noting that "[t]he injury that plaintiff suffered (*i.e.*, [the] defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread of hours pay under other, express requirements of federal and state law."  *Id.* at *2.  Other courts in this circuit have similarly relied on *Quieju* to emphasize the need for a "concrete downstream consequence" to establish standing for wage notice and statement violations.  *Brathwaite v. Martini Collections Inc.*, No. 22-CV-4929 (DEH) (GWG), 2025 WL 99108, at *7 (S.D.N.Y. Jan. 14, 2025*), report and recommendation adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025); *Maldonado v. Loxton, Inc.*, No. 20-CV-5776, 2024 WL 4449293, at *6 (E.D.N.Y. Oct. 9, 2024).

As in *Quieju*, Plaintiff here has not shown that he suffered a concrete injury resulting from Defendants' purported violations of the NYLL's wage statement and wage notice requirements.  Thus, Plaintiff lacks Article III standing to pursue his fourth and fifth causes of action.  *See, e.g.*, *Chisolm-Lucas v. Am. Airlines, Inc.*, No. 23-CV-5177 (BMC), 2025 WL 2229840, at *3 (E.D.N.Y. Aug. 5, 2025) (noting that "courts in this circuit routinely reject claims under NYLL § 195 for lack of standing"); *Vazquez v. Cousins Grocery & Grill Inc.*, No. 21-CV-4528 (RML), 2025 WL 1384069, at *9 (E.D.N.Y. May 13, 2025) (dismissing that plaintiff's wage notice and statement claims for lack of standing); *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) ("Plaintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because [p]laintiff had not adequately pleaded a tangible injury resulting from [the

defendant's] failure to provide the required notices."); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Cao v. Wedding in Paris LLC,* 727 F. Supp. 3d 239, 295 (E.D.N.Y. 2024); *Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (JAM), 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), *report and recommendation adopted*, Text Order dated Mar. 13, 2024; *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action."); *Amador v. 109-19 Food Corp.,* No. 21-CV-4633 (EK) (VMS), 2025 WL 1032031, at *27 (E.D.N.Y. Mar. 14, 2025), *report and recommendation adopted*, 2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025); *Owens v. 12710 Kitchen Corp*., No. 24-CV-6312 (BMC), 2025 WL 1371892, at *1 (E.D.N.Y. May 12, 2025). "A mere failure to provide wage statements is a prototypical informational injury that cannot create standing, and plaintiffs often struggle to identify non-speculative downstream harms caused by the allegedly deficient statements." *Chisolm-Lucas*, 2025 WL 2229840, at *3.

Because Plaintiff lacks standing, the Court lacks subject matter jurisdiction over his wage notice and wage statement claims under the NYLL. Accordingly, the undersigned respectfully recommends that Plaintiff's fourth and fifth causes of action be dismissed without prejudice.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796, 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023) ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.") internal quotations and citation omitted)), *report and recommendation adopted*, Text Order dated Jan. 9, 2024.

Here, the Court has personal jurisdiction over Defendants.  First, Plaintiff properly served MRC Bakery, a New York company, by delivering copies of the summons and Amended Complaint to Maria Notaro, at La Guli Pastry Shop, "who is designated by law to accept service of process on behalf" of MRC Bakery.  *See* Dkt. No. 15; *see also* Fed. R. Civ. P. 4(h)(1)(B). Plaintiff also properly served Notaro by personal service at her place of work, La Guli Pastry Shop. *See* Dkt. No. 18-1; *see also* Fed. R. Civ. P. 4(e)(1)-e(2)(A); N.Y. C.P.L.R. § 308(1).  "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016) ("A state has [] general jurisdiction over its residents.").  MRC Bakery is a New York corporation with its principal place of business in, Queens County, New York.  *See* Dkt. No. 13 ¶ 8.  New York courts may exercise jurisdiction over

15

corporations formed under its laws and operating within the state.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301.  New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals "who transact[] business within the state" so long as "the cause of action arises from that transaction."  *Id.* (quoting *Licci*, 673 F.3d at 60).  Notaro is alleged to be the "owner, officer, director and or managing agent of MRC [Bakery]", and exerts final authority over personnel and payroll decisions, and therefore transact business in New York.  *See* Dkt. No. 13 ¶¶ 10-12.

Accordingly, the undersigned respectfully recommends a finding that the Court may exercise personal jurisdiction over Defendants.

### C.    Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, Plaintiff asserts that venue is proper in the Eastern District of New York because "Defendants transact business and have agents in the Eastern District and are otherwise within this Court's jurisdiction for purposes of service of process."  Dkt. No. 13 ¶ 3.

Accordingly, the undersigned respectfully recommends a finding that venue is proper in this district under 28 U.S.C. § 1391(b)(2).

### IV.    <u>Procedural Compliance with Federal Rules and Local Civil Rules</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D v.*

*Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

### A.    Service of Process

The undersigned finds that Plaintiff properly served the summons and Amended Complaint on each Defendant.  Federal Rule of Civil Procedure 4(h)(1)(B) allows for service on a corporation "by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).  Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made.  Fed. R. Civ. P. 4(e)(1).  Here, "the applicable state law is N.Y. C.P.L.R. § 311(a)(1), which authorizes service upon 'an officer, director, managing, or general agent[.]'" *Cooney v. Barry Sch. of L.*, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014) (quoting N.Y.C.P.L.R § 311).  "New York's statutory provision for personal service on a corporate representative is based on, and should be construed consistently with, Federal Rule of Civil Procedure 4." *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB) (JO), 2015 WL 13731354, at *5 (E.D.N.Y. July 2, 2015), *report and recommendation adopted*, 2016 WL 233665 (E.D.N.Y. Jan. 20, 2016).

Here, MRC Bakery was served with a copy of the summons and Amended Complaint through service on Maria Notaro, who as noted above, is the "owner, officer, director, and or managing agent" of MRC Bakery.  *See* Dkt. Nos. 15, 13 ¶ 10; *see also* Dkt. Nos. 25-28.  Plaintiff

provided an affidavit from the process server which noted that service was made on Notaro on behalf of MRC Bakery and Notaro "who identified themselves as the person authorized to accept with identify confirmed by the subject stating their name." Dkt. No 15.  For service on a corporation, "the process server may rely upon the corporation's employees to identify the individuals authorized to accept service." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc*., 301 F.3d 54, 57 (2d Cir. 2002); *see also Kohler Co. v. Bold Int'l FZCO,* 422 F. Supp. 3d 681, 715 (E.D.N.Y. 2018) ("Where a person holds him/herself out to be such a person, and the circumstances objectively support a reasonable inference that the defendant would receive fair notice, the service should be sustained").  Thus, Plaintiff properly served MRC Bakery in accordance with federal and New York law through service on Notaro at La Guli Pastry Shop, as Notaro is a legally adequate agent of MRC Bakery for the purposes of service of process.

As to Notaro, federal law permits a party to effect service on an individual by "delivering a copy of the summons and the complaint to the individual personally." Fed. R. Civ. P(4)(e)(2)(A).  Here, Plaintiff personally served Notaro on November 13, 2024.  *See* Dkt. Nos. 14, 18-1.  Thus, Plaintiff properly served Notaro.

### B.    Entry of Default

The Court next finds that the Clerk of Court properly issued a certificate of default as to each defendant.  Because MRC Bakery was served on November 13, 2024, it was required to answer or otherwise respond to the Amended Complaint by December 4, 2024.  *See* Dkt. No. 16-1 ¶ 6; Dkt. No. 15; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i).  And, because Notaro was also served on November 13, 2024, she was required to answer or otherwise respond to the Amended Complaint by December 4, 2024.  *See* Dkt. No. 18-1; Dkt. No. 16-1 ¶ 6; *see also* Fed. R. Civ. P.

12(a)(1)(A)(i).  When Defendants failed to respond to the Amended Complaint, Plaintiff requested that the Clerk of the Court issue certificates of default.  Dkt. No. 16.

On December 26, 2024, the Clerk of Court—noting that both Defendants "have not filed an answer or otherwise moved with respect to the complaint and/or amended complaint herein"—properly entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  Dkt. No. 17.  Accordingly, the Clerk's entry of default in this case was proper.

### C.    Local Civil Rules 7.1 and 55.2

Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default (1) a notice of motion specifying the applicable rules or statutes pursuant to which the motion is brought; (2) a memorandum of law setting forth the cases and other authorities relied upon in support of the motion; and (3) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  *See* L. Civ. R. 7.1.  Plaintiff complied with the procedural requirement set forth in Local Civil Rule 7.1 by filing a notice of motion (Dkt. No. 25), a memorandum of law (Dkt. No. 28), and affidavits and exhibits (Dkt. Nos. 26-27) in support of the motion.  Local Civil Rule 55.2 requires that a plaintiff attach to any motion for default judgment an affidavit or declaration showing that the clerk has entered a Certificate of Default, that the movant has complied with the Servicemembers Civil Relief Act ("SCRA"), and that the defaulting party is not known to be a minor or an incompetent person.  *See* L. Civ. R. 55.2(a)(1)(A)-(C); 50 U.S.C. § 3931.  A movant must also file a certificate of service indicating the motion and all supporting documents, including the Clerk's Certificate of Default, have been personally served on or mailed to the last residence (for a natural person) or business address (for an entity) of the defaulting party.  *Id*. at (a)(3).  Additionally, if damages, attorneys' fees, or costs are at issue, a

moving party must also file "a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request." *Id.* at (c).

In accordance with Local Civil Rule 55.2(a), Plaintiff has attached to his motion for default judgment the Clerk's certificate of default, a copy of the Amended Complaint, and a proposed form of default judgment. *See* Dkt. Nos. 27-3, 27-1, 27-8.  Moreover, Plaintiff has attached an affidavit indicating he has complied with the SCRA, and that that Notaro was not on active duty at any point since the motion for default judgment was filed.  *See* Dkt. No. 27-6; *see also* 50 U.S.C. § 3931 (the SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."); *Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022) (noting that such an affidavit is absolutely mandatory), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022); *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) ("The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered.") (citation omitted).  In further compliance with Local Civil Rule 55.2(a), Plaintiff has confirmed, based on a reasonable search of public records, that Notaro is not a minor or incompetent.  *See* Dkt. Nos. 27 at 4, 27-6; L. Civ. R. 55.2(a)(1)(C).

Per Local Civil Rule 55.2(a)(3), Plaintiff has mailed all papers submitted in connection with the motion for a default judgment to the "last known business address" of MRC Bakery and the "last known residence[s]" of Notaro.  *See* Dkt. No. 25; L. Civ. R. 55.2(a)(3).  Moreover, Plaintiff has submitted sufficient documentation to fulfill Local Rule 55.2(c)'s requirement to "file

20

a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." L. Civ. R. 55.2(c). Specifically, Plaintiff has filed a signed declaration providing a basis for his wage and hour damages, including dozens of pay slips allegedly provided by Defendants during Plaintiff's employment. *See* Dkt Nos. 26, 26-1. Plaintiff's counsel has also submitted adequate documentation of attorneys' fees, costs, and expenses associated with prosecuting this case. *See* Dkt. Nos. 27 ¶¶ 26-47; 27-10; 29-1.

Accordingly, the undersigned respectfully recommends that the Court find that Plaintiff has satisfied the jurisdictional requirements to proceed with his motion under Local Civil Rules 7.1 and 55.2.

## V.    **Liability under the FLSA and NYLL**

### A.    **Statute of Limitations**

As a threshold matter, the Court considers whether Plaintiff's claims are timely under the applicable statutes of limitations. *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18-CV-5953 (AJN), 2020 WL 2832766, at *2 (S.D.N.Y. May 31, 2020). "The FLSA and the NYLL have different statutes of limitations." *Chen*, 2023 WL 2583856, at *8. "The FLSA statute of limitations is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Id.* (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez*, 2011 WL 4962397, at *2 (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010), *report and recommendation adopted*, 2010 WL 2927403 (E.D.N.Y. July 19, 2010)).

Under the NYLL, the statute of limitations is six years.  *See* N.Y. Lab. Law § 663(3).  "Courts have held that for the purposes of establishing the statute of limitations under FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period."  *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 278 (E.D.N.Y. 2015) (quoting *Addison v. Reitman Blacktop Inc.*, 283 F.R.D. 74, 81 (E.D.N.Y.2011)); *see also* 29 C.F.R. § 790.21(b) ("[A] cause of action . . . for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day.").

Here, Plaintiff commenced this action on June 27, 2024.  *See* Dkt. No. 1.  Plaintiff then filed an Amended Complaint on November 4, 2024 pursuant to Rule 15(a)(1)(B).  See Dkt. No. 13.  When "a plaintiff files an amended pleading, the Court determines the limitations period based on the filing date of the original complaint so long as the amended complaint relates back thereto."  *Escobar v. Mahopac Food Corp.*, No. 19-CV-00510 (FB) (JRC), 2025 WL 934906, at *5 (E.D.N.Y. Mar. 5, 2025), *report and recommendation adopted*, 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025); Fed. R. Civ. P. 15(c)(1).  The "central inquiry" under Rule 15 of the Federal Rules of Civil Procedure "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."  *Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp. 3d 376, 409 (E.D.N.Y. 2016) (quoting *Slayton v. Am. Express Co.,* 460 F.3d 215, 228 (2d Cir.2006), *as amende*d (Oct. 3, 2006).  "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs."  *Slayton,* 460 F.3d at 228.

Here, Plaintiff has only added factual context that clarifies his claims.  *See e.g.*, Dkt. No. 13 ¶¶ 11-12, 15, 16-17, 19-22.  No claims were changed.  *See* Dkt. No. 13.  Therefore, the claims

in the Amended Complaint relate back to Complaint "for the purposes of calculating the statute of limitations." *Escobar,* 2025 WL 934906, at *5. Plaintiff was employed by Defendants from 2019 until "on or about May 6, 2024," Dkt. No. 13 ¶ 27-28. Although the statute of limitations bars recovery under the FLSA for his time worked prior to June 27, 2021, the entire period of Plaintiff's employment is recoverable under the NYLL's six-year statute of limitations. *See Rafter v. Everlast Sign & Service Inc.*, No. 21-CV-4588 (NRM) (LGD), 2025 WL 2240446, at *26 (E.D.N.Y. Aug. 6, 2025) ("If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief." (citation modified)); *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) ("Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL.").

**B.    The Employment Relationship under the FLSA**

The FLSA is to be "construed [] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotations and citation omitted). To plead a cause of action under the FLSA, Plaintiff must establish: (1) that the defaulting defendants are employers subject to the FLSA; (2) the plaintiff is an employee within the meaning of the FLSA; (3) that the plaintiff's employment relationships were not exempted from the statute; and (4) a violation of one of the statute's provisions. *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA) (PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019) (listing elements), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

### 1.    Whether Defendants are Employers under the FLSA

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The term "person" in this definition may be an "individual" or "any organized group of persons," including corporations. 29 U.S.C. § 203(a).  The FLSA applies to employees who were either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §§ 206(a), 207(a).[3]

"To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'"  *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (quoting 29 U.S.C. § 203(s)(1)(A)(i)-(ii)); *see also Vazquez*, 2025 WL 1384069, at *2 (E.D.N.Y. May 13, 2025) ("the question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability.").  "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations."  *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT) (RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017) (citation omitted), *report and recommendation adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

---

[3] The NYLL lacks this requirement.  *See Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022) (citing *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *4 (E.D.N.Y. Apr. 1, 2008)).

### a.    MRC Bakery

"A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage." *Chen*, 2023 WL 2583856, at *9 (citation omitted); *see also Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022) ("[F]or employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce[.]").  The enterprise coverage test considers whether the employer "has employees engaged in commerce or in the production of goods for commerce, or [] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also* 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof").

Local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("[T]he test is met if [the] [p]laintiffs merely handled supplies or equipment that originated out-of-state[.]" (quotations and citation omitted)).  The individual coverage test considers the "employment actions" of each plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Rowe*, 2019 WL 4395158, at *4 (citation omitted).

Here, Plaintiff's allegations satisfy the enterprise coverage test.  Plaintiff alleges that Defendants "are in the business of baking, preparing and selling" goods that "travel in interstate commerce and/or have ingredients that travel in interstate commerce."  Dkt. No. 13 ¶ 14.

Specifically, Plaintiff states that "Defendants' fruit tarts contain fruits that are grown and or shipped from various states," that "multiple pastry items sold by Defendants contain chocolate, coffee, almonds, pine nuts, sugar, walnuts and other ingredients that travel interstate" and that "Defendants routinely use baking supplies, foil, pie tins, and pans, containers, paper products, take-out containers, and packing supplies that have travelled in interstate commerce" *Id.* ¶ 15. Plaintiff further alleges that "[c]ustomers from throughout the United States are able to order pastries and baked gods produced by Defendants for interstate delivery by Federal Express." *Id.* ¶ 18. Additionally, Plaintiff alleges MRC Bakery's "annual gross volume of sales substantially exceeded and continue to exceed $500,000.00." *Id.* ¶ 19.

Although these allegations are conclusory on their face, "multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce." *Marine*, 2022 WL 17820084, at *3 (collecting cases). Indeed, it is reasonable to infer that MRC Bakery—a bakery—engaged in interstate commerce given the nature of the trade. *See e.g.*, *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD) (JO), 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (finding defendant engaged in interstate commerce because "[i]t is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York"); *Brito*, 2022 WL 875099, at *8 (holding that it is reasonable to infer the tools and products needed to operate a bakery "do not exclusively come from New York State"); *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) (holding that the court can reasonably infer that during plaintiff's employment at defendant's

26

restaurant, at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce").

Plaintiff therefore has sufficiently alleged that he was employed by an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1).

### b. Notaro

As for Notaro, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual "operations" in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013)). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

In determining whether an individual is an "employer," the Court is guided by the "economic reality" test set forth in *Carter v. Dutchess Community College*. *See* 735 F.2d 8, 12 (2d Cir. 1984) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961)). Under this test, the Court considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotations and citations omitted); *see also Vasquez v. Bolla Operating L.I. Corp.*, No. 22-CV-7014 (NCM) (ST), 2025 WL 1029391, at *4 (E.D.N.Y. Feb. 25, 2025) ("Courts routinely hold that allegations that 'closely track' the test's factors . . . are adequate to establish that an individual

27

defendant is an 'employer.'"), *report and recommendation adopted*, 2025 WL 957555 (E.D.N.Y. Mar. 31, 2025); *Tapia*, 906 F.3d at 61 (applying the Carter factors to determine individual liability under the FLSA). "The 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)); *Brito*, 2022 WL 875099, at *6 ("The test looks at the totality of the circumstances, and no individual factor is dispositive.").

Plaintiff alleges that during his employment, Notaro served as the "owner, office, director and/or managing agent" of MRC Bakery. Dkt. No. 13 ¶ 10. The Amended Complaint asserts that Notaro "was the day-to-day overseer of operations at MRC [Bakery]" and "was and is ultimately responsible for all matters with respect to hiring and firing employees, determining employee's rates of wage, methods of pay, and responsibilities." *Id.* ¶ 11. Plaintiff further alleges that Notaro "made the decision to terminate Plaintiff's employment." *Id.* Plaintiff also asserts that Notaro "was and is responsible for maintaining employees' employment records and wage information[.]" *Id.* ¶ 12.

Plaintiff's allegations are sufficient to establish Notaro as an employer for the purposes of the FLSA. *See Carter*, 735 F.2d at 12; *Logan v. World Luxury Cars, Inc.*, No. 15-CV-00248 (ENV) (PK), 2023 WL 156878, at *3 (E.D.N.Y. Jan. 11, 2023) ("Courts in this circuit have found that factually unrefuted allegations that an individual defendant is the "owner, partner, or manager" of a corporate employer, on which the individual defendant then defaults, are sufficient to qualify the individual defendant as an "employer" under FLSA and NYLL."); *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) (finding an individual defendant qualifies as an employer under the FLSA and NYLL because "three of the four *Carter* factors are satisfied").

### 2.    Whether Plaintiff is an Employee under the FLSA

An "employee" is likewise broadly defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  Plaintiff alleges that he was employed by Defendants and provided work as "general helper" which included "stocking pastries and other goods sold by Defendants, cleaning Defendants' pastry shop, washing dishes, handling garbage and recycling, accepting deliveries, assisting with food preparation."  Dkt. No. 13 ¶ 28.  Plaintiff's allegations satisfy the definition of employee under the FLSA for the purposes of this motion.  *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *5-*6 (E.D.N.Y. Aug. 16, 2019) (determining that the plaintiff was an "employee" under the FLSA for entry of default judgment because the complaint alleged that he was employed by defendants), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).  Accordingly, Plaintiff is a covered employee under the FLSA.

### 3.    Whether any FLSA Exemption Applies

Even if a plaintiff establishes himself as an employee of a business which meets the criteria for FLSA coverage, he may still be barred from recovery if he falls within one of the FLSA's "litany of exemptions."  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015).  An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997)).  How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one.  *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129-30 (2d Cir. 2020).  The burden of invoking these exemptions, however, "rests upon the employer."

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)).

Here, because Defendants are in default, they have failed to sufficiently invoke any exemptions.  *See Borja v. MSK Rest. Corp*., No. 22-CV-6178 (EK) (VMS), 2025 WL 951402, at *12 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025); *Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at *9 (E.D.N.Y. Dec. 14, 2022) ("In defaulting, Defendants have failed to invoke any exemptions.").  "On a motion for a default judgment, therefore, a court may find that litigants are not exempt employees if they 'do not allege any facts that would make them exempt under the FLSA or NYLL.'"  *Borja*, 2025 WL 951402, at *12 (quoting *Cao*, 727 F. Supp. 3d at 275).  Thus, the undersigned respectfully recommends that Plaintiff be found a non-exempt employee under the FLSA and NYLL based on Defendants' default.

Moreover, Plaintiff does not allege any facts that would make him exempt under the FLSA or NYLL.  *See* Dkt. No. 13.  In fact, Plaintiff's description of his "general helper" duties at MRC Bakery—consisting of various types of manual tasks (*id.* ¶ 28)—suggest he would be non-exempt in any event, even in the absence of a default.  *See e.g., Brito,* 2022 WL 875099, at *7 ("Plaintiffs' complaint and supporting declarations establish that as a matter of law, the Plaintiffs' jobs as Bakers and Helpers constitute non-exempt employment under the FLSA."); *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV2-214 (DG) (AKT), 2021 WL 4255361, at *7 (E.D.N.Y. Aug. 19, 2021) (finding that plaintiff was a non-exempt bakery employee because she performed duties including "cleaning, cooking, serving as a cashier, and waiting table"), *report and recommendation adopted*, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021).

Therefore, none of the statutory exemptions under the FLSA serve to bar recovery in Plaintiff's case.

### C.    Employee Relationship under the NYLL

"To recover under the NYLL, Plaintiff must first 'prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations.'" *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 368-69 (E.D.N.Y. 2022) (quoting *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015)); *see also* N.Y. Lab. Law § 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); *Tzilin*, 2024 WL 4309775, at *8 ("Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." (citation omitted)).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Bocon*, 2025 WL 832730, at *7, the undersigned respectfully recommends a finding that Defendants are Plaintiff's employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.        Joint and Several Liability

Plaintiff seeks to hold Defendants "jointly and severally" liable via this default judgment motion. *See* Dkt. No. 27-8 at 1.

"As the Court has found that [defendants] were jointly [plaintiff's] employers, each [d]efendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [plaintiff's] favor." *Fermin*, 93 F. Supp. 3d at 37 (collecting cases); *see, e.g., Camillo v. Khim's Millennium Mkt., Inc*., No. 22-CV-7846 (AMD)(PK), 2025 WL 951265, at *17 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, *Vega Camillo v. Khim's Millennium Mkt., Inc.*, No. 22-CV-7846 (AMD) (PK), 2025 WL 948125 (E.D.N.Y. Mar. 28, 2025) (holding defendants jointly and severally liable for their violations of the FLSA and the NYLL); *Cavalotti*, 2018 WL 5456654, at *11 ("As the Court has found that [the corporate defendant] and [the individual defendant] were jointly [the] [p]laintiff's employers, each [d]efendant is jointly and severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in [the] [p]laintiff's favor"); *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and an NYLL employer, and to impose joint and several liability with corporate defendant for wage law violations); *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (finding both the individual defendants and the corporation to be liable under the FLSA on default judgment where the complaint contained allegations of actions taken collectively by the defendants); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that a corporate officer who is considered an employer under the FLSA is jointly and severally liable along with the corporation).

Accordingly, the undersigned recommends a finding that Defendants are jointly and severally liable for Plaintiff's claims.

### E.     Overtime Claims

Plaintiff seeks reimbursement for the overtime wages that he should have received pursuant to the FLSA and NYLL.  *See* Dkt. No. 13 ¶¶ 41–54.  The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'"  *Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 88 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)).  The NYLL includes the same requirement, providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for "working time over 40 hours" during "each workweek."  12 N.Y.C.R.R. § 142-2.2.

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that the plaintiff worked over 40 hours per week for a specific time period sufficient to establish an overtime claim).

Here, Plaintiff sufficiently alleges that Defendants failed to pay him the requisite overtime pay.  As noted above, when Plaintiff was hired, he anticipated working "five days per week" beginning at 7:00 a.m. and ending at "5:30 p.m. to 6:00 p.m."  Dkt. No. 13 ¶ 31.  Plaintiff alleges that he worked "far longer hours" which is reflected in the pay slips included with Plaintiff's

33

Amended Complaint, reflecting that he worked between 53 and 76 hours per week in the eight respective weeks for which pay stub were provided. *Id.* ¶¶ 33-34. In his affidavit, Plaintiff "conservatively estimates" that he typically worked 58 hours per his 6-day work week. Dkt. No. 26 ¶¶ 15-16. During this time, Plaintiff claims that Defendants "failed to pay Plaintiff 1.5 time his regular hourly rate of pay for the substantial hours Plaintiff worked above forty hours per week as required by state and federal law." *Id.* ¶ 34.

Plaintiff's allegations are therefore sufficient to establish Defendants' liability for failure to pay overtime under both the FLSA and the NYLL. *See Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421 (ENV) (MMH), 2024 WL 1242639, at *6 (E.D.N.Y. Mar. 22, 2024) (finding that the plaintiff sufficiently alleged an overtime pay based on allegations that the defendant had a policy and practice of failing to compensate for all hours worked in excess of forty hours per week at the proper overtime rate); *Newman v. West Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (finding that the plaintiff's sworn statement estimating his schedule and pay established he worked over 40 hours a week without time-and-a-half compensation and subjected the defendants to liability on default).

Accordingly, the undersigned respectfully recommends that Defendants be found liable for failure to pay Plaintiff overtime wages under both the FLSA and the NYLL.

F.      **Spread of Hours**

Plaintiff seeks reimbursement for the additional hours worked pursuant to the NYLL's spread of hours requirement. Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours. 12 N.Y.C.R.R. § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off

duty." 12 N.Y.C.R.R. § 146–1.6; *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *6 (S.D.N.Y. Sept. 18, 2015); *Esquivel*, 2023 WL 6338666, at *9 ("The "spread of hours" is the length of time between the beginning and end of an employee's workday, and includes working time plus time off for meals plus intervals off duty.").

Typically, only employees who make minimum wage or less are eligible for spread of hours pay. *See Fermin*, 93 F. Supp. 3d at 45-46 ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); *Pinovi v. FDD Enters., Inc.*, No. 13-CV-2800 (GBD) (KNF), 2015 WL 4126872 at *5 (S.D.N.Y. July 8, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level."). All restaurant workers, however, are entitled to spread of hours pay, regardless of whether they are paid minimum wage. 12 N.Y.C.R.R. § 146-1.6; *Shen v. GJ Grp. USA Inc.*, No. 19-CV-02212 (ERK) (PK), 2021 WL 8317105, at *8 (E.D.N.Y. Sept. 8, 2021) (finding plaintiffs entitled to spread of hours pay because they were restaurant workers and worked more than ten hours in a day); *Duan v. Studio M. Bar & Lounge Inc.*, No. 20-CV-2240 (RPK) (JRC), 2024 WL 4250262, at *9 (E.D.N.Y. Jan. 31, 2024) (finding that the spread of hours provision applies to all restaurant workers, regardless of their rate of pay). "The NYLL broadly defines "restaurant" as 'any eating or drinking place that prepares and offers food or beverage . . . .'" *Prudencio Trejo v. Blanca's Bakery & Deli Inc.*, No. 2:23-CV-6063 (NJC) (JMW), 2025 WL 850625, at *1 (E.D.N.Y. Mar. 19, 2025) (quoting 12 N.Y.C.R.R. § 146-3.1(b)).

Because Defendants are in the business of "baking, preparing and selling" desserts and beverages and because Plaintiff worked for Defendants in a variety of capacities, including dish washing and food preparation, Plaintiff would be considered a "restaurant worker" under New York Law. Dkt. No 13 ¶ 14, 28; *Cazares*, 2022 WL 1410677, at *10 (finding that plaintiffs were

considered restaurant workers as employees at defendants' bakery), *report and recommendation adopted*, 2022 WL 1406203 (S.D.N.Y. May 4, 2022); *Prudencio Trejo*, 2025 WL 850625, at *1 (finding that plaintiff qualifies as a "restaurant worker" " because plaintiff worked "as a cook, dishwasher, and cashier" at Defendant BBD, "a bakery and deli," where she "r[a]ng[] up order[s], serv[ed] customers, preapar[ed] food, cook[ed], and wash[ed] dishes"). Plaintiff is therefore entitled to damages for spread of hours pay based on his status as a restaurant worker.

Nonetheless, regardless of Plaintiff's status as a restaurant worker, he would still be entitled to spread of hours pay, as he was paid minimum wage for the duration of his employment for Defendants. "Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment." *Esquivel*, 2023 WL 6338666, at *8 (E.D.N.Y. Sept. 29, 2023) (citing N.Y. Lab. Law § 652(1)(a)(ii), (1-a)(a); 12 N.Y.C.R.R. § 146-1.2(a)(1)). The Amended Complaint asserts that "[a]t all revenant times, Defendants employed at least eleven [] employees . . . ." Dkt. No. 13 ¶ 14. Defendants are thus classified as "large employers" and are subject to the New York City rates for minimum wage. N.Y. Lab. Law § 652(1)(a)(i); *see also* Dkt. No. 13 ¶ 14 (noting that Defendants are operating their business within the City of New York). Where the relevant period in this action is 2019 to May 2024, the minimum wage under New York law was $15.00 per hour until January 1, 2024, at which point the minimum wage became $16.00 per hour. Dkt. No. 13 ¶ 29; N.Y. Lab. Law § 652(1)(a)(i).

Based on Plaintiff's statement about his wages while employed by Defendants, he was paid the legal minimum wage for the entirety of his employment. Dkt. No. 13 ¶ 29. And because he was paid minimum wage and did not receive the statutorily required spread of hours pay, Plaintiff has alleged sufficient facts to establish Defendant's liability under the NYLL. *See Pich v. Queens Garden Nursery Inc*., No. 22-CV-3362 (MKB) (MMH), 2024 WL 687234, at *8 (E.D.N.Y. Feb.

36

20, 2024) (finding that plaintiff is entitled to spread of hours pay because he was paid below the minimum wage), *report and recommendation adopted*, 2024 WL 967636 (E.D.N.Y. Mar. 6, 2024).

Accordingly, the undersigned respectfully recommends that Defendants be found liable for failure to pay Plaintiff spread of hours pay under the NYLL.

### G.    Wage Statement and Notice Violations

"Pursuant to the New York Wage Theft Protection Act ('WTPA'), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, 'the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;' 'the regular pay day designated by the employer;' and the employer's address and telephone number." *Tzilin*, 2024 WL 4309775, at * (quoting N.Y. Lab. Law § 195(1)(a)). "The WTPA also requires employers to provide employees with a statement with every payment of wages, listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Id.* (quoting N.Y. Lab. Law § 195(3)).

As discussed above, the undersigned respectfully recommends that Plaintiff's claims for Defendants' alleged violations of the NYLL's wage notice and wage statement provisions be dismissed, without prejudice, for lack of standing.

## VI.    <u>Damages</u>

As Defendants' liability has been established, the Court turns to evaluating damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, [t]he [C]ourt must be satisfied that [the] [p]laintiff has met the burden of proving

damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (quotations and citation omitted). "That being said, because under FLSA the burden is on an employer properly to record hours, a plaintiff need not compute FLSA damages with precision." *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quotations and citation omitted), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "The moving party need only prove 'that the compensation sought relate to the damages that naturally flow from the injuries pleaded.'" *Rodriguez*, 784 F. Supp. 2d at 125 (quoting *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159).

As described below, Plaintiff seeks damages for unpaid overtime wages under the FLSA and NYLL, spread of hours pay violations under the NYLL, and wage statement and notice violations under the NYLL,[4] as well as liquidated damages, attorneys' fees, and costs.

A.      **Overtime Pay**

"Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate" for hours worked in excess of 40 hours per workweek. *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *6 (E.D.N.Y. Mar. 9, 2021); *see* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

The amount of unpaid overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL. *See, e.g.*, *Cooper*, 2024 WL 3344001, at *10-*11 (performing a similar overtime damage calculation). To calculate Plaintiff's overtime compensation, the number of hours Plaintiff worked over forty

---

[4] Because Plaintiff lacks standing to pursue claims for NYLL § 195(1) and § 195(3), Plaintiff is not entitled to statutory damages for these claims. *See Guthrie*, 2022 WL 18999832, at *6 (finding that plaintiff "failed to establish standing for the wage notice and statements claims and thus is not entitled to statutory damages"). The undersigned will therefore not address damages for those claims.

per week is multiplied by 150 percent of the higher of their regular rate of pay, or the applicable minimum wage. *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2022 WL 18999832, at *5 (E.D.N.Y. Dec. 13, 2022), *report and recommendation adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024).  The resulting number constitutes the amount of overtime compensation owed to plaintiff on a weekly basis. *Id.*

Plaintiff provided 60 pay slips that purport to show the number of hours he worked, rate of pay, and wages received for 60 of the weeks that Plaintiff worked for Defendants. *See* Dkt. Nos. 26-1; 29-2.  For the weeks that Plaintiff does not have a pay slip, Plaintiff estimates that he worked about 58 hours per week.[5]  Dkt. No 26 ¶ 16.  In his damages calculations, however, Plaintiff has provided a 56.15-hour estimated work week, which was calculated as an average of Plaintiff's weekly hours for the weeks he retained pay slips.  Dkt. Nos. 28 at 13; 26-1; 29-2.  Therefore, Plaintiff seeks payment for 16.15 hours of overtime pay for each week he was employed by defendants that he does not have a pay slip for. *Id.*

Plaintiff does not allege a specific start date in his complaint, but lists July 22, 2019 as the first pay period in his damage calculations.  Dkt. No. 29-1 at 1.  Accepting Plaintiff's inferences as reasonable, July 22, 2019 and May 5, 2024 will be considered the start and end dates respectively, for Plaintiff's employment.  Although the statute of limitations bars recovery under

---

[5] Plaintiff claims his average weekly schedule was as follows:

Sundays: from 7:00 a.m. to 6:00 p.m.;
Tuesdays: from 7:00 a.m. to 5:30 p.m.;
Wednesdays: from 7:00 a.m. to 5:30 p.m.;
Thursdays: from 7:00 a.m. to 5:30 p.m.;
Fridays: from 7:00 a.m. to 5:30 p.m.; and
Saturdays: from 7:00 a.m. to 6:00 p.m.

Dkt. No 26 ¶ 15.

the FLSA for his time worked prior to June 27, 2021, the entire period of Plaintiff's employment is recoverable under the NYLL, as discussed above.

Plaintiff is entitled to the difference between what he was paid and what he was owed for overtime compensation. As noted above, to calculate the overtime rate that Plaintiff is entitled to, his regular rate of pay is multiplied by 1.5. *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-CV-7439 (FB) (SJB), 2018 WL 4101844, at *5 (E.D.N.Y. Aug. 7, 2018) ("Under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying by 1.5."), *report and recommendation adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018). Therefore, between July 22, 2019 and December 31, 2023, Plaintiff's overtime rate was $22.50 per hour and $24.00 per hour beginning January 1, 2024. Plaintiff alleges that he was paid at his regular hourly rate for all hours overtime hours. Dkt. No 13 ¶ 44. His overtime damages can therefore be calculated by multiplying the number of hours worked in excess of forty per week by the overtime premium (Plaintiff's overtime rate minus Plaintiff's regular rate of pay). *See Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AM) (DPK), 2022 WL 1018791, at *10 (E.D.N.Y. Mar. 16, 2022) ("Overtime damages can be calculated by multiplying the number of overtime hours []worked each week multiplied by the overtime premium [] owed."), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

The calculations below represent the overtime hours that Plaintiff worked per year multiplied by his overtime premium to provide the total unpaid overtime damages that Plaintiff is entitled to for each year and for the entire statutory period. These numbers include the number of hours depicted in Plaintiff's supplied pay slips (Dkt. Nos. 26-1; 29-2) as well as Plaintiff's average estimated 56.15 hour work week for all weeks without a pay slip.

| Year | Actual Regular Hourly Rate | OT Rate (Reg. Hourly Rate x 1.5) | OT Premium (OT Rate - Regular Hourly Rate) | OT Hours Per Year | Total Unpaid Overtime |
|------|------|------|------|------|------|
| 2019 | $15.00 | $22.50 | $7.50 | 337.85 | $2,533.88 |
| 2020 | $15.00 | $22.50 | $7.50 | 823.65 | $6,177.38 |
| 2021 | $15.00 | $22.50 | $7.50 | 839.8 | $6,298.50 |
| 2022 | $15.00 | $22.50 | $7.50 | 844.5 | $6,333.75 |
| 2023 | $15.00 | $22.50 | $7.50 | 918.22 | $6,886.65 |
| 2024 | $16.00 | $24.00 | $8.00 | 280.3 | $2,242.40 |
| TOTAL | | | | | $30,472.56 |

Accordingly, the undersigned respectfully recommends that Plaintiff receive $30,472.56 in damages for unpaid overtime wages. This number varies slightly from Plaintiff's damages calculation ($30,351.43), because Plaintiff's chart for 2021 has the proper overtime hours sum but the damages calculation does not correlate to the overtime hours worked. *See* Dkt. No 29-1 at 3. Additionally, Plaintiff's chart for 2024 has the correct total monetary overtime damages but the sum of the hours worked is incorrect. *See id.* at 6.

**B.    Spread of Hours Pay**

In his affidavit, Plaintiff provides an approximation of his weekly schedule while employed by Defendants. Dkt. No. 26 ¶ 15. Based on this schedule, Plaintiff alleges that he was scheduled for 11-hour shifts on Saturdays and Sundays, from 7:00 a.m. to 6:00 p.m., with a one-hour lunch break. *Id.* ¶ 15-16. As explained above, Plaintiff was entitled to an additional one hour of payment at the minimum wage rate for days in which he worked a spread of more than ten hours. *See Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM) (RER), 2022 WL 4646866, at *10 (E.D.N.Y. Aug. 29, 2022), (quoting *Rodriguez,* 784 F. Supp. 2d at 126) ("awarding Plaintiffs spread of hours damages by 'multiplying the number of days worked [in excess of ten hours per

day] per year by the minimum wage rate for that period'"), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022); *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012) ("Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours."). In his damage calculations, Plaintiff alleges that he worked 250 weeks for Defendants. Dkt. No. 29-1.

The undersigned's calculations for damages for violations of NYLL spread of hours provisions therefore are as follows:

| Year | Days Worked per Week in Excess of 10 Hours | Weeks Worked | Minimum Hourly Rate | Total Spread of Hour Wages Due |
|------|--------------------------------------------|--------------|---------------------|--------------------------------|
| 2019 | 2 | 24 | $15 | $720 |
| 2020 | 2 | 52 | $15 | $1,560 |
| 2021 | 2 | 52 | $15 | $1,560 |
| 2022 | 2 | 52 | $15 | $1,560 |
| 2023 | 2 | 52 | $15 | $1,560 |
| 2024 | 2 | 18 | $16 | $576 |
| TOTAL | | | | $7,536 |

Accordingly, the Court respectfully recommends that Plaintiff is awarded $7,536 in unpaid spread of hours pay. This damages award is consistent with the calculations provided by Plaintiff in his submission in support of his motion for default judgment. *See* Dkt. No 29-1 at 7.

### C.    Liquidated Damages Under the FLSA and NYLL

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1). A plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."). Courts may, however,

decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260.

The NYLL similarly permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due[,]" unless the employer provides "a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1). Because "there are no meaningful differences" between the liquidated damages provisions of the FLSA and NYLL, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana,* 887 F.3d at 123. "In light of the principle that the law providing the greatest recovery will govern, [a p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (quotations and citation omitted).

Here, Plaintiff's recovery for liquidated damages is the same under both the FLSA and the NYLL. Moreover, in light of Defendants' default, they have failed to make a showing of good faith. *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019) ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief."), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014) ("Obviously, as a result of [the] defendants' default in this action, the record is devoid of evidence of [the] defendants' good faith or reasonable belief. Therefore, the Court recommends that liquidated damages be awarded under the FLSA."); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012)

("Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages.").  Plaintiff is therefore entitled to 100 percent of his overtime pay and spread of hours wages damages as liquidated damages.

As Plaintiff's total eligible compensatory damages are $38,008.56 ($30,472.56 in unpaid overtime damages plus $7,536.00 in unpaid spread of hours pay), the undersigned respectfully recommends that Plaintiff recover "an additional equal amount as liquidated damages" in the amount of $38,008.56.  *See Rodriguez,* 784 F. Supp. 2d at 125; *Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421 (ENV) (MMH), 2024 WL 1242639, at *10 (E.D.N.Y. Mar. 22, 2024) (finding that plaintiff is entitled to liquidated damages equal to full amount of damages calculated by the court for unpaid overtime and spread of hours pay).

### D.    Attorneys' Fees and Costs

#### 1.    Fees

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

i.     **Hourly Rate**

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) (internal citations and quotation marks omitted), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id.* "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, Plaintiff seeks to recover attorneys' fees. In support of this request, Plaintiff's counsel, Marc Rapaport of Rapaport Law Firm, PLLC, seeks a total award of attorneys' fees in the amount of $11,437.00. *See* Dkt. No. 29-4 at 4. This amount is comprised of $7,960.00 for 19.9 hours of work performed by Marc Rapaport at a rate of $400.00 per hour, as well as $3,325.00 for 35 hours performed by paralegal Karina Gulfo, and $152.00 for 1.6 hours of work performed by paralegal Marcela Cabezas, both at rates of $95.00 per hour. *Id.* at 2, 4.

Courts in the Eastern District of New York have recently awarded hourly rates" from "$70 to $100 for legal support," "$100 to $200 for junior associates," "$200 to $325 for senior

associates," and "$300 to $450 for partners" in FLSA cases. *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 5259056 (Sep. 3, 2020).

Mr. Rapaport has been an attorney since 1993. Dkt. No. 28 at 21. He is the managing attorney at Rapaport Law. Dkt. No. 27 ¶ 30. He has been practicing employment law since 1995. *Id.* ¶ 32. Mr. Rapaport's firm has handled "approximately forty-five wage and hours matters in the Southern and Eastern District of New York. *Id.* Plaintiff's requested hourly rates of $400.00 per hour for Mr. Rapaport and $95.00 per hour for the supporting paralegals are in line with rates awarded in this district for attorneys with comparable experience and skill. *See Montalvo v. Arkar Inc.*, No. 17-CV-6693 (AJN), 2018 WL 2186415, at *2 (S.D.N.Y. May 10, 2018) (finding Mr. Rapaport's rate of $400 per hour "reasonable for this district" in an FLSA settlement); *Godwin v. Buka New York Corp.*, No. 20-CV-969 (RPK) (CLP), 2021 WL 612336, at *13 (E.D.N.Y. Feb. 17, 2021), *report and recommendation adopted*, 2021 WL 1026553 (E.D.N.Y. Mar. 17, 2021) (awarding attorneys' fees of $400 per hour to plaintiff's counsel in an FLSA default judgment); *Shum v. JILI Inc.,* No. 17-CV-7600 (RPK) (VMS), 2023 WL 2632497, at *5 (E.D.N.Y. Mar. 23, 2023) (approving a rate of $400 per hour for an attorney that had been practicing law for approximately 25 years); *Almond v. PJ Far Rockaway, Inc.*, No. 15-CV-6792 (FB) (JO), 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) (awarding hourly rate of $450 to an attorney with seventeen years of experience in employment and wage litigation); *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (approving a rate of $450 per hour for lawyer with "significant experience litigating FLSA and NYLL wage and hour lawsuits[.]"); *see also Estrada v. Therapy PLLC,* No. 20-CV-6125 (LJL), 2021 WL 4427068, at

*5 (S.D.N.Y. Sept. 27, 2021) (finding a $100 per hour billable rate reasonable for paralegals in an FLSA case).

Accordingly, this Court respectfully recommends that Plaintiff be awarded an hourly rate of $400.00 per hour for work performed by Mr. Rapaport and $95.00 per hour for work performed by the supporting paralegals.

## ii.    Reasonable Hours Expended

Here, the Court finds that the 56.5 hours billed by Plaintiff's counsel is appropriate for the present case.  As an initial matter, the undersigned recognizes that the number of hours billed by Plaintiff's counsel is higher than is typical in cases of this nature.  *See, e.g.*, *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding that 13.51 hours was reasonable in a FLSA/NYLL default judgment motion)*; Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628, 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving total of 22.1 hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).  But courts in this circuit have approved billable hour requests in FLSA default judgment cases for significantly more hours than in the instant case.  *See e.g., Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18, 2015) (approving 108.2 billable hours for an FLSA default judgment case with multiple plaintiffs); *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321 (DLI) (CLP), 2021 WL 7500316, at *15 (E.D.N.Y. Mar. 1, 2021) (approving 106 billable hours for FLSA and NYLL default case); *Janus v. Regalis Const., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *13 (E.D.N.Y. July 23, 2012) (approving 64.2 hours in an FLSA and NYLL default judgment case), *report and recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).  While the present request is admittedly on the high end of acceptable hours billed in a case of this nature, there are multiple

submissions from Mr. Rapaport and Ms. Gulfo that are representative of the translation services provided by Ms. Gulfo for meetings between Plaintiff and his counsel.  Dkt. No. 27-9 at 1-2. Additionally, Mr. Rapaport includes multiple entries in which he reduced the number of hours he billed while working on Plaintiff's case.  *Id.*

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $11,437.00[6] in attorneys' fees.

### 2.     Costs

When a party is awarded attorneys' fees, it is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted).  To recover these costs, the plaintiff is required to "submit adequate documentary evidence in support."  *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015).

Here, Plaintiff requests an award of $1,986.32 in costs and has submitted adequate documentary evidence in support of his request.  *See* Dkt. Nos.  29-4 at 4-5; 27-10; 30. Specifically, Plaintiff requests an award of $405.00 as reimbursement for the case filing fee.  Dkt. No. 27-9, at 4-5.  Plaintiff requests reimbursement of costs incurred in serving Defendants with both the summons, Complaint, Amended Complaint, default judgment motion and attachments

---

[6] The breakdown of attorneys' fee is depicted below:

| Individual | Hourly Rate | Number of Hours Billed | Total Fees |
|---|---|---|---|
| Marc Rapaport | $400 | 19.9 | $7,960.00 |
| Kayla Gulfo | $95 | 35 | $3,325.00 |
| Marcela Cabezas | $95 | 1.6 | $152.00 |
| TOTAL | | | $11,437.00 |

*See* Dkt. No. 29-4 at 5.

thereto, and the supplemental filing at Dkt. 29. *Id.* Plaintiff also seeks reimbursement for costs associated with mailing, photocopying, and translation services for Plaintiff's affidavit, including reasonable costs associated with Plaintiff's supplemental motion papers. *Id.*

Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

The Court deems Plaintiff's costs reasonable and recommends that Plaintiff be awarded $1,986.32 in costs.

### E. Pre-judgment Interest

Plaintiff seeks pre-judgment interest on his unpaid overtime and spread of hours pay. *See* Dkt. No. 28 at 10. The FLSA does not allow for an award of pre-judgment interest in addition to liquidated damages. *Fermin*, 93 F. Supp. 3d at 48. The Second Circuit, however, has held that both pre-judgment interest and liquidated damages may be awarded under the NYLL, because pre-judgment interest and liquidated damages under the NYLL 'are not functional equivalents' and 'serve fundamentally different purposes.'" *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *11 (E.D.N.Y. June 11, 2021) (quoting *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)). To avoid giving the plaintiff a windfall, however, courts award pre-judgment interest only on the compensatory damages award and not on the liquidated damages award. *Id*. at 49. Courts calculate pre-judgment interest on a NYLL award

at a rate of 9% per year.  N.Y. C.P.L.R. § 5004; *Zabrodin*, 2023 WL 8009319, at *12.  For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date.  N.Y. C.P.L.R. § 5001(b).  Courts have discretion to determine a reasonable date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date.  *Elghourab v. Vista JFK, LLC*, No. 17-CV-911 (ARR) (ST), 2019 WL 2431905, at *12 (E.D.N.Y. Jun. 11, 2019; *Catzin v. Thank You & Good Luck Corp.*, No. 15-CV-7109 (ALC), 2022 WL 2116682, at *2 (S.D.N.Y. June 13, 2022) ("In wage and hour cases, courts often use the midpoint of the plaintiff's employment within the limitations period.").

Here, for ease of calculation and transparency, the Court sets December 12, 2021, as the intermediate date for Plaintiff because that date marks the halfway point in his employment with Defendants between approximately July 22, 2019 and May 5, 2024.  Dkt. No. 13 ¶¶ 27-28.  Applying New York's statutory nine percent per annum rate, the Court respectfully recommends that Plaintiff be awarded pre-judgment interest of $9.37 per day,[7] from the midpoint of from December 12, 2021 to the present (August 24, 2025), which equals $12,658.87 for 1,351 days.  It is further respectfully recommended that this amount increase at the aforementioned daily rate until judgment is entered by the Clerk of Court.

---

[7] Pre-judgment interest is calculated using the following formula: (total compensatory damages due to plaintiff) multiplied by (.09/365) multiplied by (number of days from midpoint date to the date the Clerk of the Court enters judgment) or ($38,008.56 × (.09/365)).  *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 7684775, at *7, n.6 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023) (outlining the pre-judgment interest calculation).

### F.    Post-judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) (citing 28 U.S.C. § 1961(a)), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see also Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Cabrera*, 412 F. Supp. 3d at 186 (quoting 28 U.S.C. § 1961(a)).

Therefore, the undersigned respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 52.

### VII.    Conclusion

Accordingly, the undersigned respectfully recommends that the Court grant in part and deny in part Plaintiff's motion for default judgment. and that judgment be entered against Defendants, jointly and severally in the amount of $102,099.31, comprising $30,472.56 in unpaid overtime damages; $7,536.00 in unpaid spread of hours damages; $38,008.56 in liquidated damages; $11,437.00 in attorneys' fees; $1,986.32 in costs; $12,658.87 in pre-judgment interest to increase by $9.37 per day until the entry of judgment; and post-judgment interest. Additionally,

51

the undersigned respectfully recommends that Plaintiff's fourth and fifth causes of action be dismissed, without prejudice.

This Court directs Plaintiff to serve copies of this Report and Recommendation by overnight mail and first-class mail on Defendants at the below addresses, and to file proof of the same by August 26, 2025.

> MRC Bakery d/b/a/ La Guli Pastry Shop
> Attn: Maria Notaro
> 29-15 Ditmars Blvd.
> Astoria, New York 11105
>
> Maria Notaro
> 79-10 34th Ave. Apt. 5D
> Jackson Heights, NY 11372

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merle. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  Brooklyn, New York          **SO ORDERED.**
        August 24, 2025

                                     _/s/ Joseph A. Marutollo_
                                     JOSEPH A. MARUTOLLO
                                     United States Magistrate Judge